UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

 FREDERICK BROWN,

                                             :

                  Plaintiff,             :

                                               :       12cv6110 (HB)

              - against -        :

                                             :       <u>OPINION &amp; ORDER</u>

CROWDTWIST,                :

                                           :

                  Defendant.       :

-------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:[1]**

      Plaintiff Frederick Brown brings claims of age and disability discrimination exclusively under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8–107, against his former employer Crowdtwist Inc. The case is here based on diversity jurisdiction. 28 U.S.C. § 1332. Plaintiff does not oppose the motion for summary judgment with respect to his disability discrimination claim, and summary judgment is GRANTED for this claim (Pl.'s Mem. Opp. Summ. J. 1.) For the reasons discussed below, summary judgment is DENIED for the remaining age discrimination claim.

## BACKGROUND

      Crowdtwist is a startup internet technology company which provides customer loyalty solutions and data analysis to organizations. Plaintiff was employed as the company's first Head of Sales, and was responsible for formalizing the sales pipeline, building a sales team, and selling the product to new customers. Plaintiff was employed for only three months before being terminated. (Def.'s. Rule 56.1 Statement ("Def.'s 56.1") ¶¶ 13, 147.) At the time he was

---

[1] Zamira Djabarova, a second-year student at Brooklyn Law School and a Spring 2014 intern in my Chambers, provided substantial assistance in researching and drafting this opinion.

1

terminated, Plaintiff was 43 years old, making him the oldest employee in the company. (Pl.'s Ex. D.) Plaintiff was replaced by an outside candidate who was 37 years old when hired. (Def.'s Ex. F.) The founders and decision-makers at Crowdtwist were all in their thirties, ranging between the ages of 31 and 38. (Def.'s 56.1 ¶ 2.)

To demonstrate that his termination was motivated by discriminatory animus, Plaintiff recounts a number of age sensitive remarks made to him by his superiors while at Crowdtwist. Josh Bowen, one of Crowdtwist's founders and the Chief Operating Officer, told Plaintiff that "young, hip New Yorkers wear dark jeans" and that he needed "to get in shape to keep up with us young guys." (Brown Dep. 208:16-17, 210:11-13.) After Plaintiff suffered a hernia, Bowen allegedly referred to Plaintiff's hernia as an "old man injury" and said, "Look what happens when you try to keep up [with] the thirty year olds." (*Id.* 221:17-20; Compl. ¶ 27.) Irving Fain, a founder and the Chief Executive Officer, also commented on Plaintiff's email address domain being outdated, which Plaintiff took as indicative of his age. (Compl. ¶ 13.) Plaintiff also argues that he was treated more harshly than his younger replacement, who, as Plaintiff had, failed to meet quarterly sales goals. His younger replacement remained in the role for over a year but did no better in securing new business than Plaintiff. (Pl.'s 56.1 ¶ 142; Bowen Dep. 96:11-20, 98:25-99:6.)

Not surprisingly, Defendant has a different view and contends that Plaintiff was terminated due to his poor performance, not for any discriminatory reason. Primarily, Defendant opines that Plaintiff did not close any sales during his three plus months on the job. Plaintiff's compensation plan listed projected sales of $349,000 for the first quarter of 2012, and increased through the remainder of the year. (Def.'s 56.1 ¶ 49.) Plaintiff argues that he did close one deal, and that he was not required to reach the projected quota every single quarter. Defendant also states that Plaintiff performed poorly at other tasks: He was a poor interviewer, failed to recruit suitable new members for the sales team, was at a loss to pitch the company's services succinctly and develop promotional materials to help recruit customers. Plaintiff disputes each of these criticisms, pointing out that there are no contemporaneous records of these failures. In fact, the only documented assessment of Plaintiff's performance is a set of anonymous online evaluations which rated Plaintiff's skills as "excellent" or "good" in every category (Pl.'s Ex. F.)

**DISCUSSION**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "constru[e] the evidence in the light most favorable to the nonmoving party and [draw] all reasonable inferences in that party's favor." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011). Employment discrimination cases demand particular "caution about granting summary judgment to an employer" because "direct evidence of [discriminatory] intent will only rarely be available." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

The NYCHRL makes it unlawful "[f]or an employer or an employee or agent thereof, because of the actual or perceived age…of any person…to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8–107(1)(a). Claims brought under the NYCHRL are reviewed under a standard more favorable to the plaintiff than those under federal and state civil rights laws. *Williams v. New York City Hous. Auth.,* 872 N.Y.S.2d 27 (2009). State courts have noted that all provisions of the NYCHRL should be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Albunio v. City of New York,* 16 N.Y.3d 472, 477–78 (2011).

Discrimination claims are analyzed under the *McDonnell Douglas* framework.[2] *Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 171-73 (S.D.N.Y. 2011). The plaintiff must first make out a prima facie case of discrimination which establishes a presumption of discriminatory intent. *Id.* The defendant may rebut this presumption by offering a legitimate non-discriminatory basis for the adverse employment action. *Id.* If a legitimate explanation is offered, the plaintiff has the burden of demonstrating that this explanation was a mere pretext for discrimination. *Id.* However, Plaintiff need not show that Defendant's non-discriminatory

---

[2] The Second Circuit has acknowledged that it is presently unclear whether NYCHRL claims should still be analyzed using this framework. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110, n. 8 (2d Cir. 2013). However, recent cases have continued to do so. *See Farzan v. Wells Fargo Bank*, N.A., No. 12 CIV. 1217 RJS JLC, 2013 WL 6231615 at *15 (S.D.N.Y. Dec. 2, 2013) (collecting cases). Since both parties utilize the *McDonnell Douglas* framework in their briefs and the Second Circuit acknowledges that "it is not necessary to resolve this issue," I will employ it in evaluating this case. *Mihalik*, 715 F.3d at 110, n. 8 (noting that the question is "less important because NYCHRL simplified the discrimination inquiry").

justification was entirely false or unrelated to the adverse employment action, but only that impermissible discrimination also influenced the decision. *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 40 (N.Y. App. Div. 2012). A defendant is entitled to summary judgment only if the record establishes as a matter of law that 'discrimination play[ed] *no* role' in its actions." *Williams*, 872 N.Y.S.2d at 38.

    1. *Prima facie* **case**

        To establish a prima facie case of age discrimination, Plaintiff must "show (1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Graves v. Deutsche Bank Sec., Inc.*, 2013 WL 6246358 (2d Cir. Dec. 4, 2013) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir.2010)). The only matter in dispute is whether Plaintiff experienced treatment that gave rise to an inference of discrimination, that it motivated in some fashion the decision to terminate the Plaintiff. Plaintiff argues that discriminatory intent can be inferred from a number of negative comments about his age, and by the differential treatment of his younger successor. Given that this hurdle is practically at ground level, Plaintiff makes a prima facie case. *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (characterizing the requirement as "minimal" and *"de minimis"*).

        Plaintiff recounts frequent commentary from Bowen about his age and inability to "keep up" with the staff members who were in their 30s. Plaintiff started to work on December 20, 2011. (Pl.'s 56.1 ¶ 55.) These remarks began in late January, when Plaintiff started having pain in his abdomen later diagnosed as a hernia. Plaintiff says Bowen remarked that he needed to "get to the gym to keep up with everyone." (Compl. ¶ 23.) After Bowen took Plaintiff to the hospital on February 8th and heard Plaintiff give his birth date, Plaintiff says Bowen called him "an old man" and afterwards continued to make comments about his age and how he could not "keep up with young New Yorkers." (*Id.* ¶¶ 23, 24.) On March 5th, Plaintiff's hernia was discovered and he was given an emergency operation to repair it. When Plaintiff called Bowen to notify him, Bowen once again joked about his "old age" and said, "Look what happens when you try to keep up [with] the thirty year olds." (*Id.* ¶ 27.) Plaintiff claims that such comments were also made on numerous internal calls, where Bowen continued the refrain that "he could not keep up with the

thirty year olds on the team." (*Id.* ¶ 32.) On the advice of his doctor, Plaintiff worked from home and did not travel to Crowdtwist's offices in New York until March 26th. Upon his return, he was asked about the injury in front of the staff and Bowen joked that it was "an old man injury." (*Id.* ¶ 33.) Three days later, on March 29th, Plaintiff was terminated. (*Id.* ¶ 35.)

The Second Circuit has enumerated four non-dispositive factors to be considered when evaluating such remarks: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharmaceuticals,* 616 F.3d 134, 149 (2d Cir. 2010).

While Bowen was not Plaintiff's direct supervisor, he was one of the three main decision-makers in the firm, and undisputedly had input into Plaintiff's termination. (Fain Dep. 190:19-191:16; Montero Dep. 74:22-75:4; Pl's Ex. F at 6.) *See Ellis v. Century 21 Dep't Stores*, 2013 WL 5460651 at *25 (E.D.N.Y. Sept. 28, 2013) (remark by co-CEO was relevant although he was not the "ultimate decision maker" because he had input into the decision and "wielded substantial influence over Defendant's employees, including Plaintiff.") While the comments were not explicitly connected to Plaintiff's termination, some were made very close to the decision to terminate the Plaintiff, which occurred in late March. (*See* Fain Dep. 102:9-16). Finally, a reasonable juror could find that the comments showed Bowen's discriminatory animus and that Bowen viewed Plaintiff as falling into a different age category than other employees and believed this inhibited his ability to perform in a fast-paced startup environment. While Defendant contends that these were stray remarks not sufficient to show discriminatory animus, the cases belie that concept. *See, e.g.*, *Catalano v. Lynbrook Glass & Architectural Metals Corp.*, 06-CV-2907, 2008 WL 64693 at *9 (E.D.N.Y. Jan. 4, 2008) (single comment by decision-maker that Plaintiff who was getting a hip replacement was "getting old and breaking down" was not a stray remark and could be considered as evidence of discriminatory animus). While the comments are said to have been intended as jokes, whether they demonstrate discriminatory animus is for a jury to determine. *Altomare v. Wells Fargo Sec., LLC*, 2012 WL 489200 at *9

(S.D.N.Y. Feb. 15, 2012). One is reminded of Shakespeare's King Lear in which we read: "Jesters do oft prove prophets."[3]

    The Defendant argues that there could not have been discriminatory intent, because the same decision-makers who terminated Plaintiff hired him only three months prior, when he was virtually the same age. This defense is known in federal discrimination law as the "same actor inference" and its logic has been applied to claims under the NYCHRL. *See e.g. Colon v. Trump Int'l Hotel & Tower*, 10 CIV 4794 JGK, 2011 WL 6092299 at *8 (S.D.N.Y. Dec., 2011), *Leon v. Columbia Univ. Med. Ctr.*, 11-CV-08559 NSR, 2013 WL 6669415 at *8 (S.D.N.Y. Dec. 17, 2013). The three month period between the two events would make such an inference compelling. However, this defense rests on facts that are presently disputed.

    First, Plaintiff argues that at the time he was hired, no one at Crowdtwist was aware of his age. *See e.g. Browne v. CNN Am., Inc.*, 229 F.3d 1135 (2d Cir. 2000) (noting that decision-maker was aware of Plaintiff's age and medical condition in applying same actor inference.) It is undisputed that Fain was sent a resume that included Plaintiff's college graduation year. However, one could have inferred from this date that he was several years younger than he actually was (39 instead of 42) and it is not clear that anyone other than Fain reviewed it. (Def.'s 56.1 ¶ 35; Def.'s Mem. Supp. Summ. J. at 6.) Plaintiff claims that Bowen was unaware of his age until February, and that when he heard it, he had a "look of shock." (Pl.'s 56.1 ¶ 133.) Upon finding out Plaintiff's actual age and observing his health difficulties, the Crowdtwist management might well have felt that his "actual or perceived age" was older than they had originally expected. *See* N.Y.C. Admin. Code § 8–107(1)(a). Second, it is debatable whether the same actors were in fact involved in both decisions. Defendant emphasizes Fain's role in interviewing Plaintiff and as "ultimately the sole individual who made the hiring decision." (Def.'s Mem. Supp. Summ. J. at 5.) But the decision to terminate Plaintiff was made in consultation with Bowen, Montero, and the Board of Directors. (Fain Dep. 190:19-191:16; Montero Dep. 74:22-75:4.) A jury could conclude that the discriminatory motive in Plaintiff's termination came from another member of the management team, such as Bowen, who did not give meaningful input at the hiring stage. *See e.g. Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 450 (2d Cir.1999) (Even if the ultimate decision-maker is not biased, "impermissible bias of a single

---

[3] Act V, scene iii, line 72.

individual…may taint the ultimate employment decision … [as long as they] played a meaningful role in the ... process.").

Next, Defendant argues that "any inference of age discrimination is undercut where, as here, a plaintiff is over 40 years old when she is hired." *Vinokur v. Sovereign Bank*, 701 F. Supp. 2d 276, 288 (E.D.N.Y. 2010) (citations omitted). Put another way, a Plaintiff who was in a protected class when hired is unlikely to be fired because of it. This is hardly a compelling consideration. *See e.g. Piasecki v. Daughters of Jacob Nursing Home, Inc.*, 808 F. Supp. 1136, 1141 (S.D.N.Y. 1992) (being hired at the age of 70 "suggests a non-discriminatory intent… [but] does not refute other indicia of discrimination"). Furthermore, this rule of thumb appears to be based on the fact that the Age Discrimination in Employment Act protects employees over 40. *Vinokur*, 701 F. Supp. 2d at 288 n.5 (citing 29 U.S.C. §§ 623(a)(1), 631(a)). But the NYCHRL has no age limitation at all. *Mingguo Cho v. City of New York*, 11 CIV. 1658, 2012 WL 4364492 at *5 n. 3 (S.D.N.Y. Sept. 25, 2012) *aff'd*, 12-4283-CV, 2013 WL 6570611 (2d Cir. Dec. 16, 2013) (citing N.Y. City Admin. Code § 8–107(1)).

Defendant also argues that the mere five and a half year age gap between Plaintiff and his replacement precludes an inference of discrimination. In a Title VII action, an inference of discrimination "cannot be drawn from the replacement of one worker with another worker insignificantly younger." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). But Plaintiff is not attempting to establish this inference based solely on age difference. In *Nembhard*, the Second Circuit found that although replacement by a worker one year younger than Plaintiff did not alone create an inference of discrimination, "when her termination is bathed in the light of [her supervisor's] comments, a reasonable jury could infer that her termination was due to her age." *Nembhard v. Mem'l Sloan Kettering Cancer Ctr.*, 104 F.3d 353 at *4 (2d Cir. 1996). Furthermore, a jury might well view a five year age difference as significant in the context of this case, where it places Plaintiff in his forties as opposed to his thirties. *See Edwards v. William Raveis Real Estate, Inc.*, 2010 WL 3829060 (D. Conn. Sept. 22, 2010).

Finally, Defendant argues that Plaintiff cannot establish an inference of discrimination because multiple decision-makers agreed to terminate him. However, the line of Eastern District cases that Defendant refers to holds only that "[a] discriminatory inference *can be rebutted* when multiple evaluators all express dissatisfaction." *Sotomayor v. City of New York*, 862 F. Supp. 2d

226, 259 (E.D.N.Y. 2012) *aff'd,* 713 F.3d 163 (2d Cir. 2013) (emphasis added). In other words, this is one of multiple considerations weighed in the later pretext analysis. *See, e.g.*, *id.*

### 2. Legitimate Explanation

Defendant provides a legitimate, nondiscriminatory explanation for Plaintiff's treatment: poor performance. It claims that Plaintiff fell short by (1) failing to generate any new business, (2) failing to recruit new members of the sales team, (3) failing to create effective promotional sales materials, (4) failing to create an effective sales "pipeline", and (5) communicating poorly both internally and externally. (Fain Dep. 32:25-33:19; Bowen Dep. 106:17-107:4).

### 3. Pretext

To defeat summary judgment, Plaintiff must show that a reasonable jury could find that Defendant's explanation is at least partially pretextual and that "unlawful discrimination was one of the motivating factors" in his termination. *Melman*, 946 N.Y.S.2d at 40. "'[I]t is not the function of a fact-finder to second-guess business decisions' regarding what constitutes satisfactory work performance." *Soderberg v. Gunther Int'l, Inc.*, 124 F. App'x 30, 32 (2d Cir. 2005) (citing *Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1116 (2d Cir.1988)). However, Plaintiff raises material issues of fact concerning what he was given to understand were the expectations for his performance and what he in fact accomplished. Under the NYCHRL, when a plaintiff makes a reasonable showing that one of his employer's explanations is false or misleading, he is generally entitled to have a jury consider whether this false explanation is evidence of consciousness of guilt or a discriminatory motive. *Bennett v. Health Mgmt. Sys., Inc.*, 936 N.Y.S.2d 112, 121-23 (2011) ("evidence of pretext should in almost every case indicate to the court that a motion for summary judgment must be denied").

For instance, Defendant states that "[t]he expectation was that [Plaintiff] was going to achieve each of his quota numbers and more." (Fain Dep. 82:7-15.) But Plaintiff claims that he was not expected to meet the specified sales goals every quarter, and was never told so. He cites the fact that his compensation plan provided for commissions once he reached just 85% of his quarterly goal and the fact that the sales quotas were cumulative, suggesting that a better than average quarter could make up for a slow one. (Def.'s Ex. M.) Furthermore, Plaintiff claims that Crowdtwist's customer pipeline was not well developed at the time he was hired and that the process of developing customers takes approximately 6 months, suggesting that he could not, nor

could his employers realistically expect him to, achieve significant sales in the first quarter of his employment. (Pl.'s 56.1 ¶¶ 23-24.) The parties also dispute whether Plaintiff in fact closed a deal in his quarter of employment. It is undisputed that a contract worth $120,000 annually was concluded with the Miami Dolphins during this time. (Bowen Dep. 36:18-25.) Defendant claims that the deal was substantially complete before Plaintiff joined Crowdtwist and should not be credited to him. (Fain 117:3-14.) Plaintiff argues that he played a critical role in finalizing the deal and was explicitly told it would be part of his sales quota. (Brown Dep. 132:16-134:7.) If the Miami Dolphins deal is counted, Plaintiff argues that his track record was similar to that of his younger replacement, Flanagan, who closed two deals in his first two quarters, falling well short of his sales quotas, but remained Head of Sales for over a year. (Pl.'s 56.1 ¶ 142; Bowen Dep. 37:15-40:3, 96:11-20, 98:25-99:6.)

Plaintiff also disputes several other allegations about his performance, such as his level of responsibility for a late and poorly developed "one sheet" describing the business to prospective clients, the reaction to a sample sales pitch Plaintiff gave at a board meeting, and whether Plaintiff had personality conflicts with other members of the staff.  (P's Resp. to D's 56.1 ¶¶ 64, 92, 130.) Because Defendant's case rests almost exclusively on the testimony of its founders, all of these disputes require credibility determinations to resolve, a quintessential jury role.

Defendant's explanation may also be undermined by other data. Plaintiff points to his universally positive reviews in the company's anonymous 360 degree review tool, "ClearGears." Plaintiff's evaluation was "excellent" for overall performance, speaking skills, positive attitude, and communication, and "good" for client acquisition. (Pl.'s Ex. E.) Defendant contends that the reviews may not represent the views of management because they were anonymous. (Def.'s. Reply Mem. Supp. Summ. J. at 13). However, Fain acknowledged that he himself contributed to Plaintiff's ClearGears assessment. (Fain Dep., 159:10-24.) The legitimacy of these reviews and whether they undermine Defendant's explanation is a question of fact. Finally, Plaintiff claims that he was never informed that his performance was inadequate prior to his termination, though Fain claims that he communicated this on "a number of different occasions." (Fain Dep. 103:23-104:12.) A reasonable jury might see these positive indicators as undermining Defendant's story.

**CONCLUSION**

For the above reasons, summary judgment is GRANTED on consent with respect to Plaintiff's claim of disability discrimination and DENIED with respect to Plaintiff's claim of age discrimination. The clerk of court is instructed to close this motion and remove it from my docket.

SO ORDERED
April 15, 2014
New York, New York

Hon. Harold Baer, Jr.
U.S.D.J.